**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**CIVIL ACTION No. 1:83-CV-00293-MPM**

| | |
|---|---|
| **HORACE WILLIE MONTGOMERY, et al.** | **PLAINTIFFS** |
| **v.** | |
| **STARKVILLE MUNICIPAL SCHOOL** | **DEFENDANTS** |
| **DISTRICT, et al.** | |

**Consolidated with**

| | |
|---|---|
| **WILLIAM H. HARRIS, III, et al.** | **PLAINTIFFS** |
| **and** | |
| **UNITED STATES OF AMERICA** | **PLAINTIFF-INTERVENOR** |
| **v.** | |
| **OKTIBBEHA COUNTY SCHOOL** | **DEFENDANTS** |
| **DISTRICT, et al.** | |

**UNITED STATES' RESPONSE TO DEFENDANTS' JOINT MOTION TO APPROVE**
**DESEGREGATION ORDER FOR CONSOLIDATED SCHOOL DISTRICTS**

**I.    Introduction**

The United States of America, by and through the undersigned counsel, now responds to

Defendants' Joint Motion to Approve Desegregation Order, filed on March 17, 2015.  The

United States is in agreement with Defendants that a new desegregation order is required to

govern the proposed Consolidated District, and has no objection to many aspects of the

Defendants' proposed plan – including provisions on student assignment in grades 7-12, student

transfers, transportation, and gifted education.  The United States has concerns, however, with

several specific aspects of Defendants' proposal, the most significant being: (1) student

assignment in grades K-5 (including preservation of a virtually one-race African-American

elementary school); (2) assignment of, and educational opportunities available to, Oktibbeha 6th grade students; and (3) the process for assigning faculty and staff to the Consolidated District. Further, as set forth below, Defendants have not produced sufficient information about the desegregative impact or practicability of alternatives to their proposed plan, or even demonstrated that they analyzed or considered alternatives that would further desegregation.

## II. Procedural History

On February 6, 1970, this Court issued a desegregation order which directed Defendant Oktibbeha County School District ("Oktibbeha") to cease operating a dual school system based on race, and to eliminate the effects thereof. The United States has been Plaintiff-Intervenor in the desegregation case against Oktibbeha since October 3, 1986. On February 5 and 6, 1970, this Court entered separate orders requiring Defendant Starkville Municipal Separate School District ("Starkville") to similarly cease operation of a dual school system and to immediately begin to operate a unitary school system. The United States has not been a party to the Starkville desegregation case. Since 1970, the Court has entered additional orders in both the Oktibbeha and Starkville cases to further the desegregation of both districts. These desegregation orders remain active and neither district has been declared unitary by this Court in any area of operations. The two separate desegregation cases against Oktibbeha and Starkville were formally consolidated into one case before this Court on January 14, 2015.

On April 24, 2014, the State of Mississippi ordered the consolidation of Oktibbeha with Starkville (together, "Defendants"). The consolidation is scheduled to take effect on July 1, 2015, forming the "Starkville-Oktibbeha Consolidated District" ("Consolidated District"). Having learned through media reports about the planned consolidation, on March 1, 2014, the United States requested from Defendants a comprehensive analysis of the desegregative impact

2

of the proposed consolidation.  On March 12, 2014, the United States received copies of preliminary consolidation plans that contained no information about the desegregative impact of the proposed plan.

On June 10, 2014 and February 4, 2015, the United States reiterated its request for information about how Defendants intended to meet their desegregation obligations in planning for the proposed Consolidated District.  The requested information was never provided.  At each point of contact with Defendants between March 2014 and February 2015, counsel for the United States expressed interest in working with Defendants to jointly draft a desegregation plan that would govern the Consolidated District.  The Defendants did not engage the United States in development of the proposed plan or provide the United States with information that would allow the United States to assess the desegregative impact of the plan.

On March 17, 2015, nearly one year after the State ordered consolidation, and less than four months from the date the consolidation is scheduled to take effect, the Defendants filed their Joint Motion to Approve Desegregation Order ("Defs' Motion") (Doc. 14), Memorandum in Support of Joint Motion to Approve Desegregation Plan for Consolidated School Districts ("Defs' Memorandum") (Doc. 15) and Proposed Desegregation Order for Consolidated School Districts ("proposed plan") (Doc. 14-6).  This March 2015 filing was the United States' first opportunity to review the proposed plan, which differed from the preliminary consolidation plan the Defendants provided in March 2014.

On March 26, 2015, the United States filed its Motion for Extension of Time to File a Response to Defendants' Joint Motion to Approve Desegregation Order for Consolidated School Districts and for Limited Discovery (Doc. 16), and its Memorandum in Support of Motion for Extension of Time to File a Response to Defendants' Joint Motion to Approve Desegregation

Order for Consolidated School Districts and for Limited Discovery (Doc. 17). On March 30, 2015, the Court granted the United States' request, ordering an extension of time allowing the United States until May 31, 2015 to file its Response and granting the request for limited discovery on student assignment in grades K-6, faculty and staff, and school facilities.

On March 30, 2015, Defendants agreed by telephonic conference to provide the requested information on an expedited and rolling basis. On May 1, 2015, the discovery deadline, Defendants provided their first and only production. *See* Defendants' Response to United States' Discovery Requests ("Defs' Response"), attached as Exhibit A; Defendants' document production ("Defs' Production"), attached as Exhibit B. The United States responds to the Defendant's Motion and proposed plan below.

## III. Legal Standards

The proposed Consolidated District would be comprised of two school systems that were previously segregated by law and that have not yet obtained a declaration of unitary status.[1] Defendants' Motion states, and the United States agrees, that a new desegregation plan and order is needed to govern the Consolidated District. *See* Defs' Memorandum (Doc. 15), ¶ 6. While the United States has no objection to many aspects of Defendants' proposed plan, the United States also believes that certain modifications are needed to comply fully with Defendants' affirmative duties to desegregate. *See Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("[S]chool authorities are 'clearly charged with the affirmative duty to take whatever

---

[1] Although unitary status is not at issue here, to be declared unitary a district must demonstrate that it has (1) fully and satisfactorily complied in good faith with the court's desegregation orders for a reasonable period of time, (2) eliminated the vestiges of prior *de jure* segregation to the extent practicable, and (3) demonstrated a "good-faith commitment to the entirety of a desegregation plan so that parents, students, and the public have assurance against further injuries or stigma." *Freeman v. Pitts*, 503 U.S. 467, 491-92, 498 (1992) ("The duty and responsibility of a school district once segregated by law is to take all steps necessary to eliminate the vestiges of the unconstitutional *de jure* system.")

4

steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch.'") (quoting *Green v. County School Bd. of New Kent Cnty., Va.*, 391 U.S. 430, 437-38 (1968)). The affirmative duty to desegregate is a continuing responsibility, and "[p]art of the affirmative duty . . . is the obligation not to take any action that would impede the progress of disestablishing the dual system and its effects." *Dayton Bd. of Educ. v. Brinkman*, 443 U.S. 526, 537-38 (1979).

It has long been recognized that the goal of a school desegregation case is to promptly convert a *de jure* segregated school system to a system without "white" schools or "black" schools, but just schools. *Green*, 391 U.S. at 442. Courts have recognized that "school officials are obligated not only to avoid any official action that has the effect of perpetuating or reestablishing a dual school system, but also to render decisions that further desegregation and help to eliminate the effects of the previous dual school system." *Harris v. Crenshaw Cnty. Bd. Of Educ.*, 968 F.2d 1090, 1095 (11th Cir. 1992). Indeed, proposals must be reviewed in light of other options that are feasible and more promising in effecting desegregation. *Green,* 391 U.S. at 439.

## IV.    The United States Response to Defendants' Motion and Proposed Plan

The Defendants' Motion indicates that the proposed plan is intended to address the "*Green* factors," six areas identified by the Supreme Court for evaluating compliance with desegregation duties: (1) student assignment; (2) faculty; (3) staff; (4) transportation; (5) extracurricular activities; and (6) facilities. *Green*, 391 U.S. at 435-42; *Bd. of Educ. of Oklahoma City Pub. Sch. v. Dowell,* 498 U.S. 237, 249-50 (1991); *Missouri v. Jenkins*, 515 U.S. 70, 88 (1995). These factors are not a "rigid framework," and the Supreme Court has identified other indicia, such as "quality of education," as important considerations in determining

"whether minority students [are] being disadvantaged in ways that require [the formulation of new] and further remedies to ensure full compliance with the court's decree." *Freeman*, 503 U.S. at 492-93. These *Green* factors and other indicia are the roadmap by which the United States evaluates a proposed desegregation plan. The United States discusses Defendants' proposed plan and desegregation order in light of each of the *Green* factors, below.

### A.    Student Assignment

The Defendants' proposed student assignment plan projects 2015-2016 school year enrollment for the Consolidated District as follows:

| School | B | W | O | Total | Capacity |
|---|---|---|---|---|---|
| **East Oktibbeha ES (PK-6)** | 280 (94%) | 14 (5%) | 4 (1%) | 298 | 334.20 |
| **West Oktibbeha ES (PK-6)** | 140 (72%) | 51 (26%) | 3 (2%) | 194 | 265.2 |
| **Sudduth ES (K-2)** | 732 (66%) | 324 (29%) | 61 (5%) | 1117 | 886.5 |
| **Ward - Stewart ES (3-4)** | 459 (65%) | 204 (29%) | 43 (6%) | 706 | 766.8 |
| **Henderson ES (5)** | 230 (64%) | 109 (30%) | 23 (6%) | 362 | 396 |
| **Armstrong MS (6-8)** | 767 (67%) | 317 (28%) | 53 (5%) | 1137 | 596.25 |
| **Starkville HS (9-12)** | 1051 (71%) | 395 (26%) | 41 (3%) | 1487 | unknown |

Source: Defs' Memorandum (Doc. 15), ¶ 11 and Ex. B at SOCSD-000039; SOCSD-000060

### 1.    Elementary School – Grades K-5

Under the proposed plan, former Starkville elementary students will continue enrollment in schools divided by grade – grades K-2, 3-4, and 5 in three separate schools. Oktibbeha students in grades K-5 will continue to attend school in one of two buildings – either East Oktibbeha Elementary or West Oktibbeha Elementary. The average racial composition of

elementary schools in the Consolidated District will be 69% black students and 26% white students, with four of the five elementary schools projected to enroll between 64% and 72% black students and between 26% and 30% white students.

Defendants' proposed plan, however, does not further desegregation in any way in East Oktibbeha Elementary School; indeed, the plan preserves East Oktibbeha Elementary School as a virtually one race school, with a projected enrollment of 94% black student students and 5% white students. Courts have recognized that plans that leave in place one-race schools are subject to particular scrutiny. *See Lee v. Macon Cnty. Bd. of Educ.,* 616 F.2d 805, 809, 811 (5th Cir. 1980) (observing that "[i]n reviewing desegregation plans proposing one-race schools, courts must scrutinize the schools to make sure that the authorities' reasons for retaining them can surmount the presumption of unconstitutionality"); *United States v. South Park Indep. Sch. Dist.*, 566 F.2d 1221, 1225 (5th Cir. 1978) (noting that "situations justifying one-race schools are rare and must be carefully scrutinized").

In its Discovery Requests, the United States asked the Defendants to explain what alternative school assignment configurations they considered and why the Defendants did not elect a plan with a more desegregative effect. Defendants' Response indicated consideration of only one alternative configuration of K-5 students – "closing the two Oktibbeha elementary schools and bringing all K-6 Oktibbeha students into the Starkville schools." Ex. A at 2. Defendants rejected this alternative as impracticable, citing lack of capacity at any of the Starkville elementary schools to accommodate the addition of Oktibbeha students there. *Id.*; Ex. B at SOCSD-000034.

There is no indication, however, that Defendants considered other seemingly practicable alternatives that could further desegregation in the Consolidated District. For example, Sudduth

7

Elementary School, a Starkville school serving students grades K-2, has a capacity to serve 886.50 students, but expects to enroll 1117 students in 2015-2016 school year – 230 students over capacity. Defs' Memorandum (Doc. 15), ¶ 11, Ex. B at SOCSD-000039. Sudduth Elementary is projected to enroll 66% black students and 29% white students and is approximately 6.2 miles away (a 13-16 minute drive) from East Oktibbeha Elementary. East Oktibbeha Elementary is under-enrolled, with a capacity to serve 334 students and an expected enrollment of only 298 students in the 2015-2016 school year. *Id.* at SOCSD-000060-000065. Defendants have produced no evidence demonstrating that they considered the practicability and desegregative impact of rezoning students currently attending Sudduth Elementary to East Oktibbeha Elementary.

In fact, the Defendants' production revealed the Defendants never considered rezoning any students enrolled in grades K-5 in Starkville schools to either of the Oktibbeha elementary schools. Absent any consideration or analysis by the Defendants of the practicability or desegregative impact of alternatives that would not maintain East Oktibbeha as a virtually one-race school, the United States must oppose the proposed student assignment plan with respect to K-5 students. The United States believes Defendants should revise their proposed plan to further desegregation for East Oktibbeha Elementary students; the United States has been and remains willing to work with Defendants to develop an agreed-upon and feasible plan to address this issue. In the event that the Court finds that it is not practicable for Defendants to modify the proposed K-5 student assignment plan for the 2015-2016 school year, Defendants should develop a revised plan that would further desegregation and be implemented starting with 2016-2017 school year, and submit that plan to the United States and the Court by October 1, 2015.

8

## 2.    Elementary and Middle School – Grade 6

The Defendants' proposed plan relegates Oktibbeha 6th grade students to the two Oktibbeha elementary schools, one of which is highly segregated, while enrolling Starkville 6th grade students at Armstrong Middle School along with all grade 7-8 students in the Consolidated District.  Defendants assert that they considered a number of alternative student assignment configurations for students in grades 6-8, but offer only generic and sweeping explanations for dismissing those alternatives: space and capacity limitations at Starkville schools, financial and time constraints for construction, and a desire to avoid busing elementary students from their immediate areas of residence.  Ex. A at 4.  While Defendants indicate that they considered configurations that would have allowed all 6th grade students in the Consolidated District to attend school together, they do not explain, specifically, why they instead elected a plan that leaves 6th grade students at East Oktibbeha Elementary in a class that, for the last two school years, was 100% black.  *Id.* at 5.

Defendants' Production indicates that it will cost between $3 million and $4.3 million to add classrooms at Armstrong Middle School.  Ex. B at SOCSD-000005-000006; 000012; 000022.  The District proposes this renovation to accommodate Starkville 6th grade students and all 7th and 8th grade students in the Consolidated District, but claims it is impracticable to accommodate the remaining 54 6th grade students currently attending the two Oktibbeha elementary schools.  Defendants provide no support for this assertion of impracticability and no evidence that they considered the desegregative impact of serving all 6th grade students at Armstrong Middle School.

There are a number of potential alternatives to student assignment for 6th grade students that do not rely on Armstrong Middle School, which is significantly overenrolled.  *Id.* at

9

SOCSD-000040. For example, Defendants could seemingly send all 6th grade students in the Consolidated District to the Overstreet School, which currently serves as an alternative school in the Starkville District and is less than a mile from Armstrong Middle School. Overstreet has capacity to enroll over 300 additional students (*Id.* at SOCSD-000060), while Armstrong Middle School is expected to be significantly overenrolled. *Id.* at SOCSD-000040. The alternative school could either continue to operate at Overstreet, or could be moved to another location, such as one of the former East or West Oktibbeha High School facilities. Defendants could also choose to utilize the former East and West Oktibbeha High School facilities to serve all 6th grade students in the Consolidated District. Defendants' proposed plan for 6th grade students burdens only Oktibbeha students (an overwhelming majority of whom are black), does not further desegregation in any way, and costs over $3 million. Yet this plan was selected over others which could further desegregation and spread the burden of consolidation more equitably across the Consolidated District.

The United States has related concerns about the equality of educational opportunities for 6th grade students in East and West Oktibbeha Elementary Schools as compared to those available to 6th graders attending Armstrong Middle School. Defendants state that 6th grade students at Armstrong will have access to electives in drama, band, strings, and robotics but

> [t]he[se] electives will not be offered to the Oktibbeha sixth grade students because (1) Oktibbeha students have not yet had a background in general music (playing recorders and Orff instruments) or (2) the programs such as robotics and necessary personnel are too expensive for the small number of county students who may elect to take the electives. Instead, the Oktibbeha sixth grade students will be given priority to enroll in any of the elective subjects when they move to the 7th grade at Armstrong Middle. Oktibbeha students will be encouraged to take general music if they may be interested in band or strings for the seventh grade.

Ex. A at 6.  These differences in course opportunities result in inequities in educational opportunities for Oktibbeha 6th grade students.

Defendants have not demonstrated the impracticability of alternative student assignment plans for 6th grade students that would further desegregation and provide equitable opportunities to all students.  The United States has identified two alternative student assignment options:  (1) Defendants could include the 54 6th grade Oktibbeha students in Armstrong Middle School along with 6th grade students from Starkville; or (2) Defendants could serve all 6th grade students together in an alternative facility such as the Overstreet School or in the East or West Oktibbeha High School facilities.  Given these seemingly practicable alternatives, Defendants should submit to the Court a modified plan that furthers desegregation by serving all 6th grade students in one facility.[2]  In the event that 6th grade Oktibbeha students continue to be served at East and West Oktibbeha Elementary schools, Defendants should submit a modified plan that ensures equitable course offerings and electives for all students in the Consolidated District.

### 3.    Middle and High School – Grades 7-12

The Defendants' proposed plan consolidates students in grades 7-12 into a single-grade structure, under which all students in grades 7-8 will attend Armstrong Middle School and all high school students will attend Starkville High School.  The United States has no objection to

---

[2] Defendants have asked both the Court and the United States to consider future plans at Mississippi State University (MSU) Campus as part of its proposed student assignment plan.  Defendants state that "future plans for the Consolidated District include a new school facility on the Mississippi State University Campus to serve all Oktibbeha and Starkville students in grades 6 and 7, thereby removing the county six graders from the county elementary schools."  Defs' Response at 3; *see also* Defs' Motion (Doc. 14) ¶ 12, n. 7.  However, recent news reports indicate that this plan is in jeopardy due to lack of funding.  Defendants have not produced evidence that a new facility on the Mississippi State University Campus is a definitive plan that can be considered by the United States and reviewed and approved by the Court.  Absent such a showing, neither the United States nor the Court has sufficient information to consider the Defendants' proposed MSU Campus for grades 6-7 as part of its desegregation plan.  Therefore the Defendants' proposed assignment of 6th grade Oktibbeha students to their respective elementary schools is the only proposal before the Court.

the proposed plan regarding student assignment in grades 7-12, but reserves the right to monitor the implementation of the student assignment plan.

### 4. Transfers

The Defendant's proposed order lays out extensive provisions governing student transfers, a subject which falls within student assignment as a *Green* factor. The United States does not object to any of the Defendants' proposed provisions as they relate to student transfers, but reserves the right to monitor student transfer policies and practices.

### B. Faculty and Staff

The United States opposes the District's Motion and the proposed plan as it relates to faculty and staff due to remaining concerns with regard to hiring, retention, and dismissal of administrators, faculty, and staff at the middle and high school level. Under the proposed plan, the two Oktibbeha high schools currently serving grades 7-12 are scheduled to close as part of the consolidation and all Oktibbeha administrators, faculty, and staff at those schools will be terminated. Defs' Memorandum (Doc. 15), ¶ 19. Terminated Oktibbeha employees may reapply to advertised openings in the Consolidated District. *Id.* As proposed, the plan places the entire burden of the consolidation of faculty and staff on employees at the Oktibbeha high schools – faculty and staff who are 72% and 84% black, respectively. Ex. B at SOCSD-000070-000071. In contrast, faculty and staff at Starkville High School are, respectively, approximately 37% and 48% black. *Id.* Both Oktibbeha and Starkville, individually, and the Consolidated District, have desegregation obligations related to faculty and staff. Their proposed plan to terminate all Oktibbeha employees does not meet those obligations because it disproportionately burdens black faculty and staff in Oktibbeha to the advantage of Starkville's majority white faculty.

Instead of firing faculty and staff in the Oktibbeha schools, Defendants could have elected to advertise all positions for faculty and staff serving grades 7-12 in the newly Consolidated District and require all faculty and staff currently serving those grades in Oktibbeha and Starkville to reapply for the positions in the Consolidated District. Alternatively, the District could have foregone advertising openings and, instead, assessed all employees in both Districts using objective, non-discriminatory selection criteria and retained those with the highest rankings while non-renewing all others. Either approach would more equitably distribute the burdens associated with consolidation across the entire faculty and staff of the Consolidated District. According to the Defendants,

> [t]he concept of non-renewing all middle and high school faculty in both districts was rejected because it would have resulted in disruption for all faculty, possible litigation, and loss of faculty who may have other employment opportunities. The concept of evaluating all faculties of middle and high school grades is almost impossible because of the difficulties of comparing performance in separate school districts by different administrators. It is difficult to hold a principal accountable for faculty and staff whom the principal may not have chosen to hire.

Ex. A at 9-10. Defendants' explanation fails to acknowledge that the current proposed plan results in disproportionate and inequitable disruption to faculty and staff from Oktibbeha schools, which is made up of 30% more black faculty and staff than currently exists at Starkville High School. Ex. B at SOCSD-000070-000071. And, Defendants proposed plan could, arguably, result in greater exposure to litigation, as termination of a category of disproportionately black employees from the Oktibbeha schools, while preserving the same category of disproportionately white employees in Starkville schools, could lead to litigation under state employment laws and/or Title VII of the Civil Rights Act of 1964, which prohibits both intentional and disparate impact discrimination based on race.

13

Additionally, the United States finds unpersuasive the Defendants' assertion that "it is difficult to hold a principal accountable for faculty and staff whom the principal may not have chosen to hire." Ex. A at 9-10. Such a statement first presumes, without any justification or explanation, that the Starkville high school administrators, as opposed to the Oktibbeha high school administrators, are the best qualified candidates to lead the new Starkville High School. Second, schools change administrators routinely and newly hired administrators are often held accountable for faculty and staff that they did not have the opportunity to directly hire. Simply because such an arrangement poses some difficulties does not make it impracticable; and here, Defendants have provided no evidence suggesting that they assessed the desegregative impact of alternatives for consolidating the faculty and staff of two the districts.

Finally, Defendants argue that "[u]nder state law, the Starkville District is obligated to offer contracts to all certified personnel to who its Superintendent did not give notice of non-renewal by the statutory deadline of April 15. State law, however, permits the Conservator of the Oktibbeha District to non-renew certified employees at any time and without any deadline to do so." *Id.* at 9. Defendants appear to suggest that it is now too late to change the proposed plan with regard to faculty and staff, because the April 15 non-renewal deadline in Starkville has passed. But Defendants were aware that they were under the desegregation orders of this Court when they opted to take significant employment actions in Starkville, and to unilaterally dictate sweeping terminations of all high school employees in Oktibbeha – all without providing the United States proper notice and opportunity to respond, and without seeking this Court's approval.

Defendants have waited until the last hour to move for approval of their proposed plan, and as a result of their own delays, now claim there is insufficient time for modifications to

various aspects of the proposed plan, such as the composition of the Consolidated District's faculty and staff. The United States opposes the proposed plan with respect to faculty and staff and believes that Defendants can and should cease all plans to non-renew Oktibbeha employees serving students in grades 7-12 and develop a faculty and staff hiring and retention plan that is equitable and consistent with their desegregation obligations. To that end, Defendants should (1) identify how many teachers it will need in each grade level and subject matter to serve students in grades 7-12, along with how many administrators, counselors, and other staff members should be employed at the consolidated high school; (2) assess all current Oktibbeha and Starkville employees serving grades 7-12 who fit within those distinctive categories using objective criteria – such as seniority status or performance ratings – and rank them from most qualified to least qualified based on the objective criteria used; (3) select those employees for retention (in numbers matching the need established within that category of employee) who are ranked highest in their respective category and (4) terminate all other employees not selected after employing the selection method described above.[3]

The United States intends to closely monitor faculty and staffing in the newly Consolidated District. Defendants should retain all employment records in connection with the advertisement and hiring for new positions to be opened at Starkville High School. Additionally, Defendants should include on each application form for open positions advertised in the Consolidated District a field where applicants can, on a voluntary basis, disclose their race – the voluntary nature of the disclosure should be made clear to applicants. The United States reserves

---

[3] The United States acknowledges Defendants' assertion that under state law, the Starkville District is obligated to offer contracts to all certified personnel to whom its Superintendent did not give notice of non-renewal by the statutory deadline of April 15. Ex. A at 9. However, in this instance, the United States asserts that compliance with that state law is inconsistent with Defendants' federal desegregation obligations, as ordered by this Court.

the right to review all employment records, policies, and procedures in the Consolidated District to ensure that hiring and termination practices are consistent with desegregation obligations and do not discriminate against black faculty and staff in the District.

### C.     Facilities

The United States does not object to the content of the proposed order entitled "School Construction and Site Selection."  However, because the United States objects to various aspects of the student assignment plan, the United States has concerns about facility improvements, construction, and related expenditures, to the extent that the proposed plan requires facilities improvements that do not further desegregation in the Consolidated District.

For example, Defendants represented to the Court that "Armstrong Middle has the capacity to house all Starkville students in grade 6 and all students in grades 7 and 8 for the Consolidated District."  Defs' Memorandum (Doc. 15), ¶ 22.  In fact, Armstrong Middle School requires significant facilities investments before the proposed plan can be implemented.  The District proposes to spend between $3 and $4.3 million dollars to expand classrooms at Armstrong Middle School to accommodate the 6th grade Starkville students and all 7th and 8th grade students in the Consolidated District – and those expansions do not include classrooms for 54 Oktibbeha 6th grade students, the overwhelming majority of whom are black.  Ex. B at SOCSD-000005-000006; 000012; 000022.  Because the United States objects to the proposed student assignment plan as it relates to 6th grade students, the United States similarly objects to any improvements or additions to Armstrong Middle School for the purpose of accommodating 6th grade Starkville students, without also including 6th grade Oktibbeha students.  Defendants should cease any such construction until the Court approves a student assignment plan for those students.

16

The United States does not oppose improvements to Armstrong Middle School to accommodate all 7th and 8th grade students in the Consolidated District. Additionally, the United States does not oppose improvements to East and West Oktibbeha Elementary Schools. Defendants should provide the United States the most up-to-date plan for any and all facility improvements within the Consolidated District, including the most recent estimate of the cost of those improvements, and the current proposed schedule for all facility improvements. Defendants' Response to the United States' Discovery Requests failed to provide this information in a clear and usable manner. The United States reserves the right to continue to review facility selection and improvements in the Consolidated District to ensure that all school construction, school consolidation and site selection does not have a discriminatory impact on black students in the Consolidated District.

**D.      Transportation**

The United States does not object to the proposed plan as it relates to transportation. The United States reserves the right to review bus routes and the assignment of students to buses to ensure that the proposed plan, as implemented, does not discriminate against black students in the Consolidated District.

**E.      Extracurricular Activities**

The District's proposed order does not include a provision about extracurricular activities and Defendants' Memorandum cites the fact that neither of the desegregation orders governing the Oktibbeha and Starkville Districts included any provisions regarding extracurriculars. Defs' Memorandum (Doc. 15), ¶ 25. However, Defendants acknowledge in their Memorandum that "extracurricular activities are one of the *Green* factors." *Id.*; *see also Green*, 391 U.S. at 435. The United States believes the desegregation order governing the Consolidated District should

17

contain a provision about extracurricular activities sufficient to permit the Court and the United

States to readily monitor and assess compliance in this area, and suggests language as follows:

"The District will ensure that all students may participate in extracurricular activities – including

sports, clubs, and other extracurricular activities – without regard to race."

**F.     Other Provisions**

**1.     Academically Gifted Students**

The United States does not object to the content of the proposed order as it relates to

academically gifted students.  However, the United States reserves the right to review

implementation of the gifted program, including screening for the program, as well as policies

and procedures related to the program, to ensure that gifted identification and programming does

not discriminate against black students in the Consolidated District.

**2.     Biracial Committee**

While both existing desegregation orders governing Oktibbeha and Starkville contain

provisions for a biracial advisory committee, Defendants propose excluding such a provision

from the new desegregation order governing the Consolidated District.  Defendants state that

such a committee is "unnecessary" because "the Consolidated District's board will have both

black and white members, and the two school districts have had racially mixed boards for years"

and "the Consolidated District will continue to follow Starkville's model of parental and

community participation in decision-making processes."  Defs' Memorandum (Doc. 15), ¶ 26.

The United States disagrees.  There is no reason to eliminate a requirement for a biracial

committee, which serves the important purpose of ensuring biracial representation on a

committee designed to provide advice to the school district regarding the District's desegregation

obligations.  The United States believes that a provision requiring a biracial committee should be

included in the desegregation order governing the Consolidated District and offers the following proposed language: "The District shall form and maintain a Biracial Committee which shall render assistance and counsel to the District on implementation of the desegregation plan. The Biracial Committee shall be comprised of either 8 or 10 members, and shall include an equal number of black and white members. For the first three years of operation, committee membership should reflect equal representation of parents and teachers from the historic Oktibbeha and historic Starkville districts."

### 3.    Quality of Education

 As noted above, the *Green* factors are not intended to be a rigid framework, and courts routinely review "quality of education" factors in assessing a district's compliance with its desegregation duties." *Freeman*, 503 U.S. at 492-93. In reviewing this factor, courts have considered student discipline, access to coursework, advanced programs, student achievement gaps, and disparities in graduation rates. Student discipline may also fall within analysis of specifically enumerated *Green* factors, including student assignment. The United States will consider these quality of education factors as it reviews the Consolidated District's progress toward desegregation.

### 4.    Reporting Requirements

The United States also believes the desegregation order governing the Consolidated District should contain reporting requirements sufficient to permit the Court and the United States to readily monitor and assess compliance, and suggests language as follows:

"By no later than June 30, 2016, and annually thereafter, the District shall provide to the United States and file with the Court the following information for all public schools operating in

the District (including charter and other non-traditional public schools) so that the District's progress toward a unitary system can be monitored:

1.      The total number and percentage of students, by race/ethnicity and grade level, assigned to each school.

2.      For each classroom in each school, the total enrollment in the class, by race/ethnicity, the grade served, and the subject or program of the class, specifically indicating any groupings or assignments by ability, achievement, or other basis such as advanced placement or honors classes, special education programs for students with disabilities, gifted and talented programs, and classes for limited English proficient students.

3.      The total number of students who have requested intra-district transfers, indicating for each such request:  the student's race/ethnicity, grade, sending school (school the student is zoned to attend), receiving school (school to which transfer is sought), reason for the transfer request, whether the District granted or denied the transfer, and the reason for granting or denying the transfer.  The District shall provide the same information for inter-district transfers.

4.      A report of discipline data by school on the imposition of exclusionary discipline consequences (in-school suspensions, out-of-school suspensions, referrals to alternative placement, recommendations for expulsion).  The data shall be disaggregated by race, grade level, and infraction.

5.      The total number and percentage of teachers and administrators, by race/ethnicity and position, assigned to each school, specifically indicating all full-time teachers, part-time teachers, principals and assistant principals, and other certified personnel, such as guidance counselors and librarians.

6.     The total number and percentage of non-certified staff, by race/ethnicity and position, assigned to each school.

7.     A list of the vacancies occurring/created and filled for school-based administrators, faculty and staff (separately listing certified and non-certified), by school, and by position.

8.     The number of applicants for each vacancy, by race, ethnicity, school, positions being filled, rank and type of certificates, area of endorsement and highest degree.

9.     Identification of the individuals to whom offers were made to fill each vacancy (separately listing certified and non-certified staff), by position filled, school, race, ethnicity, and whether the person ultimately hired was an existing employee of the school district at the time of hire, or a new hire from outside the school district.  Where the person hired was an existing employee at the time of hire, identify the departing school and position.

10.     A list of the teacher and administrator transfer requests denied and granted from one school to another, by departing and receiving school, race and ethnicity of transferee, position transferred from and to, and the total duration of the transferee's assignment to the sending school that immediately preceded the transfer, and the reason(s) for each denial or grant. The same information is to be provided as to teacher and administrator reassignment.

11.     A brief description of any present or proposed plan to site or construct new facilities or expand existing facilities and the projected racial impact of the proposal.

12.     State whether the transportation system, if any, in the District is desegregated to the extent that black and white students are transported daily on the same buses.

13.     A list of extracurricular activities with competitive enrollment (e.g., tryouts or eligibility requirements), and the number of students by race/ethnicity who sought to participate and those who were and were not selected.

14.     Copies of yearbooks for each school in the District that produces one (filed with the United States only).

15.     State whether there is a Biracial Committee, whether the Biracial Committee has submitted recommendations to the Board of Education, and, if so, provide copies of such recommendations and the Board's response.

16.     Names and races of all members of the Biracial Committee, whether they were formerly affiliated with the Oktibbeha or Starkville Districts, and their current role in the District (e.g., parent, teacher).

17.     Meeting dates of the Biracial Committee and documentation of attendees."

## V.     Conclusion

The United States does not object to Defendants' proposed plan as it relates to student assignment in grades 7-12, student transfers, transportation, or academically gifted students. However, in other areas, Defendants have not produced sufficient information about the desegregative impact of the proposed plan or whether they considered practicable alternatives that could further desegregation in the Consolidated District.  The United States must oppose those elements of the proposed plan that relate to student assignment in grades K-6, faculty and staff, and facilities (only inasmuch as the facility proposals are connected to objectionable student assignment proposals for grade 6), absent the modifications described herein.  The United States has been and remains willing to negotiate an agreed resolution of these concerns

with Defendants, and to collaboratively develop a plan that complies fully with Defendants' obligations.


Dated:  May 22, 2015                    Respectfully submitted,


FELICIA C. ADAMS                        VANITA GUPTA
United States Attorney                   Principal Deputy Assistant Attorney General
Northern District of Mississippi
900 Jefferson Avenue                     /s/ Victoria McNamee
Oxford, MS 38655-3608                    ANURIMA BHARGAVA
Telephone: (662) 234-3351                WHITNEY M. PELLEGRINO
Fax: (662) 234-3318                      VICTORIA MCNAMEE (DC Bar. No.
                                         1008599)
                                         United States Department of Justice
                                         Civil Rights Division
                                         Educational Opportunities Section
                                         950 Pennsylvania Avenue, NW, PHB 4300
                                         Washington, DC 20530
                                         Telephone: (202) 514-4092
                                         Fax: (202) 514-8337
                                         victoria.mcnamee@usdoj.gov

## CERTIFICATE OF SERVICE

I do hereby certify that on this date, I filed electronically the foregoing with the Clerk of this Court using the ECF system which will send notification of filing to all registered counsel of record.

I also certify that I have on this date sent a copy of the foregoing via U.S. Mail to the following:

Mr. Wilbur O. Colom
Colom Law Firm
200 6th Street, Suite 700
Columbus, MS 39701

Dated: May 22, 2015


                                         /s/ Victoria McNamee